IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CV-00470 (F)

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTH CAROLINA, DEAN DEBNAM, CHRISTOPHER HEANEY, SUSAN HOLLIDAY, CNM, MSN and MARIA MAGHER, <br><br> Plaintiffs, <br><br> v. <br><br> EUGENE A. CONTI, JR., in his official capacity as Secretary of the North Carolina Department of Transportation, MICHAEL ROBERTSON, in his official capacity as Commissioner of the North Carolina Division of Motor Vehicles, and MICHAEL GILCHRIST, in his official capacity as Colonel of the North Carolina State Highway Patrol, <br><br> Defendants. | **DEFENDANTS RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION** |

NOW COME Defendants Eugene Conti and Michael D. Robertson, who are joined by Defendant Gilchrist, for the limited purpose of opposing Plaintiffs' Motion for Preliminary Injunction by and through their respective attorneys of record, Roy Cooper, Attorney General of the State of North Carolina, Neil Dalton, Special Deputy Attorney General, and Hal F. Askins, Special Deputy Attorney General, and respond to the Motion for Preliminary Injunction filed by Plaintiffs in this action. Defendants respond as follows:

NATURE OF THE CASE

Plaintiffs have filed an action seeking declaratory and injunctive relief to prohibit the issuance of the "Choose Life" license plate to those who wish to purchase it in North Carolina. By its motion, Plaintiffs seek a preliminary injunction to enjoin issuance of the plate while the action is pending.

## STATEMENT OF FACTS

**Allegations in the Complaint:**

Plaintiffs ACLU and individuals challenge, in a declaratory judgment action under 28 U.S.C. §§ 2201-02, a North Carolina statute which makes available a specialty license plate with the words "Choose Life" to vehicle owners. The North Carolina statutes, however, do not make available to vehicle owners a specialty plate that expresses support for a woman's right to reproductive freedom. *Complaint at* ¶¶ 2, 3, 8-12. The Complaint alleges that authorizing the "Choose Life" plate but not an alternative for pro-choice supporters is discriminatory. *Complaint at* ¶ 14.

The "Choose Life Plate" was one of several specialty plates authorized by House Bill 289. The measure was passed by the North Carolina General Assembly and was signed into law by the Governor on June 30, 2011. *Complaint at* ¶ 19.

The "Choose Life" plate costs $25 per year in addition to the regular registration fee. Of this, $15 would go to the Carolina Pregnancy Care Fellowship. The funds collected are prohibited from being given to any entity that provides or promotes abortion. *Complaint at* ¶ 23.

Several amendments to the legislative bill authorizing the "Choose Life" plate and other specialty plates were proposed by members in the North Carolina legislature. All of the proposed amendments such as "Trust Women, Respect Choice," "Trust Women," and "Respect Choice" were defeated by vote in the North Carolina General Assembly. *Complaint at* ¶¶ 28-32.

The individual Plaintiffs in this action assert that, if available, they would purchase plates that bore one of the alternative messages if it were available. *Complaint at* ¶¶ 9-12.

**News Articles:**

On June 9, 2011, both the Raleigh News and Observer and the Charlotte Observer

2

published the following article that was part of a larger article authored by Jim Morrill of the Charlotte Observer. This article can be found at www.NewsandObserver.com. It states:

> House approves 'Choose Life' Tag
>
> The N.C. House gave final approval Wednesday night to a bill that would have it join two dozen other states in offering a "Choose Life" license plate.[1]
>
> The bill which passed 70-46, would include the anti-abortion tag among 14 additional specialty plates. Most of the money from the $25 tag would go to non-profits that provide counseling and other pregnancy services excluding abortion.
>
> Supporters say the tag could help prevent abortions. Critics say it puts the state on a path of allowing political messages on state licenses.
>
> Democratic Rep. Bill Faison of Orange County offered an amendment to add an abortion-rights plate to the mix. The effort failed. Jim Morrill.

The News and Observer, www.NewsObserver.com, June 9, 2011.

On October 23, 2011, the Raleigh News and Observer posted an article explaining that $15 collected from the sale of each "Choose Life" plate would go to fund "anti-abortion programs.[2]

## ARGUMENT

### THE MESSAGE ON THE "CHOOSE LIFE" PLATE IS GOVERNMENT SPEECH AND, THEREFORE, DOES NOT VIOLATE THE FIRST AMENDMENT TO THE U.S. CONSTITUTION.

Defendants urge that the Motion for Preliminary Injunction be denied on the grounds that Plaintiffs are not likely to succeed on the merits. *Newsom v. Albemarle County Sch. Bd.*, 354 F.3d

---

[1] The number of states offering a "Choose Life" plate was in 2008 estimated to be only 17. *See* Alana C. Hake, *The States, A Plate, and The First Amendment: The "Choose Life" Specialty License Plate as Government Speech*, 85 Wash. L. Rev., 409 , 410 (2008).

[2] *See* Craig Jarvis, *'Choose Life' to fund centers: Anti-abortion programs set to get money, possibly more influence from two new laws,* The News and Observer, www.NewsObserver.com October 23, 2011.

3

249, 254 (4TH Cir. 2003).

Plaintiffs argue that in allowing a "Choose Life" plate without also allowing a "pro-choice alternative," the North Carolina General Assembly has violated the First Amendment to the United Sates Constitution. *Plaintiffs' Memorandum of Law in Support of Plaintiffs" Motion for a Temporary Restraining Order and Motion for Preliminary Injunction* [Plaintiff's Memorandum] *at page* 5. In making this allegation, Plaintiffs contend that the State has engaged in "viewpoint discrimination" and that such viewpoint discrimination is private speech and, therefore, illegal.

In support of the notion that authorizing a license plate with the message "Pro Choice," is private speech, Plaintiffs rely on *Planned Parenthood of South Carolina Inc. et al. v. Rose*, 361 F. 3d 786 (4th Cir. 2004) cert. denied, 543 U.S. 1119 (2005). The fact pattern in *Rose* is substantially similar to the case in bar in that in *Rose*, South Carolina authorized a "Choose Life" plate for vehicle owners to put on their automobiles, without authorizing a plate with an "pro-choice" message. *Rose,* 361 F. 3d at 789.[3] In *Rose,* the Fourth Circuit Court of Appeals found that the message conveyed by the "Choose Life" plate was private speech, and furthermore, by not allowing a pro-choice alternative South Carolina committed viewpoint discrimination in violation of the 1st Amendment. *Rose,* 361 F. 3rd at 792. [4]

The finding that the message of the "Choose Life" plate conveyed private speech as opposed to government speech was central to the decision in *Rose.* 361 F.3d at 792 "The usual first step in answering such a question is to classify the relevant message as either government or private speech." *Id.*citing *Legal Servs. Corp. v. Velazquez,* 531 U.S. 533 (2001); *Sons of*

---

[3] A bill that would have authorized the "pro-choice view," "died in Committee." *Id.*

[4] Notwithstanding the findings of the 4th Circuit Court of Appeals in *Rose,* a "Choose Life" plate has been available in South Carolina since approximately May 2008, after a "seven year struggle." *See* Steven Ertelt, *www.lifenews.com,* May 26, 2008.

4

*Confederate Veterans, Inc. v. Comm'r of Va. Dept't of Motor Vehicles*, 288 F.3d 610, 616 (4TH Cir. 2002).

Given the similarities between *Rose*, and the case at bar, ordinarily the holding in *Rose* would be considered binding precedent. *See United States v. Collins*, 415 F.3d. 304 (4TH Cir. 2005) (a decision of a circuit panel becomes the law of the circuit unless overruled by a subsequent en banc opinion or a decision of the Supreme Court); *see also Etheridge v. Norfolk & Western Ry Co.*, 9 F. 3d 1087, 1090 (4TH Cir. 1993); *Busby v. Crown Supply, Inc.*, 896 F.2d 883, 840-41 (4TH Cir. 1990); *United States v. Sims*, 441 F.3d 313, 318 (4TH Cir. 2006).

In *Johanns* the dispositive question was whether a federal program that finances generic advertising to promote an agricultural product violates the First Amendment. *Johanns v. Livestock Mktg Ass'n.* 544 U.S. 550, 553 (2005). There, the Secretary of Agriculture had promulgated the "Beef Order," under which beef producers were forced to pay fees to, among other things, sponsor advertising. In that case, the advertisements such as "Beef, it's what's for dinner," bore the attribution "Funded by Americas Beef Producers" and was required to display a Beef Board logo. The advertisements themselves were created by the Cattlemen's Beef Promotion and Research Board (Beef Board) which was appointed by the Secretary. The advertisements also were approved by the Secretary. *Id.* at 553-56.

The Supreme Court held that the advertisements were governmental speech, reasoning that:

> [W]hen, as here, the government sets the overall message to be communicated and approves every word that is disseminated, it is not precluded from relying on the government-speech doctrine merely because it solicits assistance from non-governmental sources in developing specific messages.

*Id.* at 562.

In coming to this conclusion, the Supreme Court noted that the Secretary of Agriculture

5

exercised final approval authority over every word used in every promotional campaign. *Id.* Therefore, the degree of government control over the message is a key factor in whether speech is deemed to be governmental or private. *Id.* at 561-62. In the case at bar, the degree of governmental control was complete. Plaintiffs concede in their Complaint that the final approval authority over the wording of the license plate at issue was the North Carolina General Assembly. *Complaint at* ¶ 20. This is certainly true as the "Choose Life" plate as well as all other plates issued in North Carolina are authorized by statute. N.C.G.S. § 20-81.12(b84). Defendants assert, therefore, that the message of the "Choose Life" plate is also government speech. The government could not exercise more control over the message than it has. *Id.*

Also of significance to the *Johanns* Court in finding the beef advertisements to be government speech, was the political accountability for producing the advertisements. Specifically, the beef advertisements were drawn by the Beef Board, which was overseen by the Secretary of Agriculture. Yet the Supreme Court stated:

> The Secretary of Agriculture, a politically accountable official, oversees the program, appoints and dismisses the key personnel, and retains absolute veto power over the advertisements' content right down to the wording. And Congress, of course, retains oversight authority, not to mention the ability to reform the program at any time. No more is required.

*Johanns*, 544 U.S. at 563-64.

Here, there is far more accountability for the authorization of the "Choose Life" plate by the North Carolina General Assembly than there was for the beef advertisements in *Johanns*. A comparison of the degree of political accountability to the case at bar makes it clear that the North Carolina General Assembly took a strong and public stand in authorizing the "Choose Life" plate. It then went farther and declined to authorize an "alternative" viewpoint plate. Each of the voting members of the General Assembly on either side of the issue regarding these plates took a

stand which they knew could mean the difference as to whether they might be re-elected or not. By taking this action they knew that some North Carolina license plates would bear the message "Choose Life" and that no North Carolina License plates would bear the "alternative" messages sought by the opponents of the "Choose Life" plate.

It is difficult to imagine the General Assembly taking a more clear political stand on a controversial issue. By comparison, the Supreme Court found that the somewhat indirect degree of political accountability inherent in the innocuous beef advertisements promulgated by a relatively anonymous Beef Board to be all the political accountability that was "required." *Id.*

Since the ruling in *Johanns*, the Sixth Circuit Court of Appeals has found that the First Amendment was not violated when the State of Tennessee made available a license plate with a "Choose Life" inscription but did not make available the purchase of a license plate with a "pro-choice" or pro-abortion rights message. *ACLU of Tenn. v. Bredesen*, 441 F.3d 370 (6th Cir.), *cert. denied*, 548 U.S. 906 (2006). In so ruling, the *Bredesen* court acknowledged that the State of Tennessee engaged in the "exercise of government one-sidedness with respect to a very contentious policy issue. *Id.* at 372. Like North Carolina, as cited in *Bredesen*, the State of Tennessee charged a premium for the specialty plate ($35). Half of this money was shared by the non-profit group that advanced the cause on the plate. Like North Carolina, the Tennessee legislature refused to authorize a "pro-choice" specialty plate. *Id.* at 372.

Citing *Johanns*, the Sixth Circuit Court of Appeals found that the message conveyed by the "Choose Life" plate was government speech. *Id. at 376.* Citing *Rust v. Sullivan*, 500 U.S. 819, (1991), the *Bredesen* Court dispelled the notion that the specialty plate created a "forum for expression" that must allow for dissenting viewpoints. *Id.* at 378. The court further found that there is nothing in the Supreme Court's decisions in *Rust* or *Johanns* that implies that the

government has less right to control expressions of its policies when it relies on unpaid private people to display the plates, and that there is no distinction between volunteer disseminators (the purchasers of plates) and paid disseminators.

In *Planned Parenthood v. Rose*, the Fourth Circuit Court of Appeals wrote that it was an important element to government speech that it be made clear that the message be from the government. In *Rose*, the Court stated:

> Moreover, the State's role in promoting the Choose Life message is obscured from the public. When a certain viewpoint dominates a speech forum, it should be clear to the public whether that dominance reflects the prevailing view or whether it results from a government restriction. In this case, the pro-life position exclusively dominates the abortion debate in the license plate forum, but the reason for that dominance is not readily apparent to the ordinary citizen. Those who see the Choose Life plate displayed on vehicles, and fail to see a comparable pro-choice plate, are likely to assume that the presence of one plate and the absence of another are the result of popular choice. Specifically they are likely to assume that there are pro-life residents in South Carolina in South Carolina, but not pro-choice residents who seek to express their viewpoint in the license forum.

*Rose*, 361 F.3d at 798.

As shown above, this "ordinary citizen " argument was dismissed by the Supreme Court in *Johanns* when it concluded that ["n]o more is required" than the nebulous political accountability present in that case to find the beef advertisements to be government speech. *Johanns*, 544 U.S. at 563-64. In considering what the "ordinary citizen" would think rather than who controlled the message, the *Rose* Court erroneously concluded that displaying the "Choose Life" plate was private speech.

Further, it is clear that given the publicity surrounding the "Choose Life" plate in the newspaper articles generated by the statue authorizing the "Choose Life" plate and the news articles generated by this litigation, that passage of the "Choose Life" plate was a noteworthy political event and is part of the public debate. The people in South Carolina may have been

8

Case 5:11-cv-00470-F Document 30 Filed 11/07/11 Page 8 of 12

unaware of the public debate over the "Choose Life" plate and all of the related issues, but in North Carolina, the "Choose Life" plate was clearly tied to the abortion issue by the new media.

The *Johanns* Court could not have made this point more strongly since the dissent, in large part, felt that it was not obvious that the message in the beef advertisements was not coming from the government. *Johanns*, 544 U. S. at 570 (Souter, J., dissenting). The dissent even suggested that the beef advertisements should have been labeled as having been coming from the government in order to utilize the government speech defense. *Id.* at 571-72. By failing to adopt these standards, the majority of the Supreme Court has made it clear that "government speech" need not clearly be labeled as such. *Johanns,* 544 U.S. at 563-64.

In finding the beef advertisements to be "government speech", the *Johanns* Court was not swayed by the fact that the funding for the advertisements came from the beef producers and not from general government revenue. The fact that the revenue for the specialty plate comes from the purchasers of the plates therefore, does not render the "Choose Life" plate private speech." *Id.* at 562.

The Fourth Circuit noted in *Rose*:

> There we acknowledged that "no clear standard has yet been enunciated in our circuit or by the Supreme Court for determining when the government is 'speaking' and thus able to draw viewpoint based distinctions, and when it is regulating private speech and thus unable to do so.

*Rose,* 361 F.3d at 792.

Defendants assert that, notwithstanding the fact that "no clear standard" had been formulated by the Supreme Court before the ruling in *Johanns*, the Supreme Court has clearly spoken now:

> When, as here, the government sets the overall message to be communicated and approves every word that is disseminated, it is not precluded from relying on the government-speech doctrine . . .

9

*Johanns*, 544 U.S. at 562.

Given the change or clarification to the definition of "government speech" enunciated in *Johanns*, Defendants argue that the holding in *Rose* should not be seen as binding precedent. That Defendants should prevail on all of the issues before this Court.

The Seventh, Eighth and Ninth Circuit Courts of Appeal have recently decided cases involving "Choose Life" license plates. Although the context was different, both the Eighth and Ninth Circuit Courts upheld the issuance of the "Choose Life" plate on First Amendment grounds.

In *Choose Life Illinois, Inc. v. White*, 547 F.3d 853 (7TH Cir. 2008), the Seventh Circuit Court of Appeals found that the proposed "Choose Life" plate in Illinois would have violated the First Amendment. In so finding, the Seventh Circuit found that the message contained in the Illinois "Choose Life" plate was "private speech." 547 F.3d at 863. Defendants in the instant case argue that this conclusion is incorrect, at least as applied to the facts in North Carolina. In *Choose Life Illinois,* attempts to authorize the "Choose Life" plate were defeated in the Illinois legislature, and issuance of the plate was denied by the Secretary of State. *Id* at 857. As the Seventh Circuit conceded when the government sets the overall message to be communicated and "approve[s] every word to be disseminated," the result is government speech. *Id* at 862.

The Eighth Circuit Court of Appeals recently ruled that the State of Missouri should not have denied an organization a "Choose Life" plate under its State Laws. *Choose Life of Missouri, Inc, v. Dir. of Department of Revenue, et al.*, 560 F.3d 860 (8th Cir. 2009). This case is somewhat different, in that although in Missouri the legislature may pass a statute allowing a specialty plate, as was done in North Carolina, it also would allow an organization to apply for a specialty plate. Although the posture of the case is different, ultimately, the Court upheld the "Choose Life" plate. *Id.*

10

Choose Life did apply for a specialty plate and was turned down. Although the court ruled that the message on the "Choose Life" plate constituted private speech, it found that both the plate holders and the organization promulgating the plate were exercising their First Amendment right to speak, so the plate was upheld. *Choose Life*, 560 F.3d at 860, 868, 871.

Similarly in Arizona, the Ninth Circuit Court of Appeals struck down on First Amendment grounds the denial of a "Choose Life" plate sought by the Arizona Life Coalition, Inc. *See Arizona Life Coalition Inc., v. Arizona License Plate Comm'n Chair*, 515 F.3d 956 (9th Cir. 2008). Again, issuance of the "Choose Life" plate was upheld on First Amendment grounds.

**Conclusions**

As outlined above, notwithstanding a split in precedential cases, the defendants urge that the message conveyed by the specialty plate "Choose Life" is governmental speech and, therefore, not in violation of the First Amendment to the U.S. Constitution. Plaintiffs have not, therefore, shown a likelihood of success on the merits of the underlying case, and accordingly, the Motion for Preliminary Injunction should be denied.

Respectfully submitted, this the 7th day of November, 2011.

ROY COOPER
ATTORNEY GENERAL

ROY COOPER
ATTORNEY GENERAL

s/ Electronically submitted
Neil Dalton
Special Deputy Attorney General
Attorneys for Defendants Conti & Robertson
North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602-0629
Email: ndalton@ncdoj.gov
Telephone: (919) 716-6543
Facsimile: (919) 716-6708
State Bar No. 13357

s/Electronically submitted
Hal F. Askins
Special Deputy Attorney General
Attorney for Defendant, Gilchrist
North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602-0629
Email: haskins@ncdoj.gov
Telephone: (919) 716-6560
Facsimile: (919) 716-6760
State Bar No. 9681

CERTIFICATE OF SERVICE

I, Neil Dalton, Special Deputy Attorney General, do hereby certify that on this date a copy of the foregoing Memorandum in Response to the Plaintiffs Motion for Preliminary Injunction was electronically filed with the Clerk of Court utilizing ECF/CM System which will send notification of such filing to all parties of record.

>	Katherine Lewis Parker
>	Legal Director, American Civil Liberties Union
>	Of North Carolina Legal Foundation
>	Post Office Box 28004
>	Raleigh, NC 27611
>	Email: acluncklp@nc.rr.com

This the <u>7th</u> day of November, 2011.

>	<u>s/ Electronically submitted</u>
>	Neil Dalton
>	Special Deputy Attorney General