IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CV-00470 (F)

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF NORTH CAROLINA, DEAN DEBNAM, CHRISTOPHER HEANEY, SUSAN HOLLIDAY, CNM, MSN, and MARIA MAGHER, <br><br>    Plaintiffs,<br><br>v.<br><br>EUGENE A. CONTI, JR., in his official capacity as Secretary of the North Carolina Department of Transportation, MICHAEL ROBERTSON, in his official capacity as Commissioner of the North Carolina Division of Motor Vehicles, and MICHAEL GILCHRIST, in his official capacity as Colonel of the North Carolina State Highway Patrol,<br><br>    Defendants. | **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

s/ Katherine Lewis Parker
Katherine Lewis Parker
NC Bar No. 36263
Legal Director, American Civil Liberties Union
of North Carolina Legal Foundation
Post Office Box 28004
Raleigh, North Carolina 27611
Telephone: (919) 834-3466
Facsimile: (866) 511-1344
Email: kparker@acluofnc.org

Counsel for Plaintiffs

## ANALYSIS

In their Response, Defendants contend that the "Choose Life" message on the specialty license plates at issue is government speech and therefore does not violate the Constitution. Defs.' Response to Motion for Preliminary Injunction at 3 ("Defs.' Resp. at ____"). This argument is contrary to binding Fourth Circuit precedent in the case of *Planned Parenthood of South Carolina, Inc. v. Rose*, 361 F.3d 786, 799 (4th Cir. 2004), which is directly on point, both factually and legally. Further, Defendants' argument contradicts the conclusions of most other federal circuit courts, which have found that specialty license plates constitute at least partially private speech and are therefore subject to the rules regarding reasonableness and viewpoint neutrality. Finally, Defendants' argument contradicts North Carolina legislators' and officials' own admissions that the speech at issue here is private speech. Consequently, Plaintiffs respectfully request that this Court grant their Motion for a Preliminary Injunction, as set forth more fully in Plaintiffs' original brief.

I.  **Binding Fourth Circuit Precedent Makes It Clear That The "Choose Life" Specialty License Plate Implicates Private Speech.**

As more fully set forth in the Plaintiffs' initial brief in support of the Motion for Preliminary Injunction, binding Fourth Circuit precedent makes it clear that (1) the speech at issue is private speech; and (2) viewpoint discrimination on this very issue violates the First Amendment to the United States Constitution. In *Planned Parenthood of South Carolina, Inc. v. Rose*, 361 F.3d 786, 799 (4th Cir. 2004), the Fourth Circuit held that South Carolina violated the First Amendment by offering a "Choose Life" license

2

plate without offering a pro-choice alternative. In *Rose*, the Fourth Circuit noted that the first step in determining whether South Carolina had engaged in impermissible viewpoint discrimination when it authorized a "Choose Life" license plate was to determine whether the speech at issue was government speech or private speech. *Rose*, 361 F.3d at 792. If the message is government speech, viewpoint discrimination does not run afoul of the Constitution. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 833, 115 S. Ct. 2510, 2518 (1995). If the message is private speech, however, then the government cannot discriminate based on the substance of the message. *Rose*, 361 F.3d at 792. As such, this first step "is generally dispositive in viewpoint discrimination cases . . . ." *Id.*

In *Rose*, as well as in *Sons of Confederate Veterans, Inc. v. Comm'r of Va. Dept. of Motor Vehicles (SCV)*, 288 F.3d 610 (4th Cir. 2002), an earlier case also involving another specialty license plate, the Fourth Circuit applied the common four-factor test to conclude that specialty license plate schemes at least partially implicate private speech. The four factor test examines: "(1) the central purpose of the program in which the speech in question occurs; (2) the degree of editorial control exercised by the government or private entities over the content of the speech; (3) the identity of the literal speaker; and (4) whether the government or the private entity bears the ultimate responsibility for the content of the speech." *SCV*, 288 F.3d at 618 (internal quotations omitted); *Rose*, 361 F.3d at 792-93.

In *Rose*, the Fourth Circuit noted factual differences between the *SCV* case and the "Choose Life" example. For instance, in *SCV*, a private organization requested the plate, and Virginia authorized, but modified, the plate to prevent the display of the Confederate

3

flag. *Rose*, 361 F.3d at 793. However, in *Rose,* the Court noted that "the State acts as a covert speaker within the specialty license plate forum." As such, the Court concluded that the "Choose Life" plate "embodies a mixture of private and government speech." *Id.* Nevertheless, the Court concluded that the third and fourth factors of the test – the identity of the literal speaker and who bears the ultimate responsibility for the speech – weighed in favor of a finding of private speech. *Id.* at 793-94.

Even Defendants concede that the facts of the instant case are virtually identical to the facts at issue in *Rose*. Defs.' Resp. at 4 ("The fact pattern in *Rose* is substantially similar to the case in bar . . . ."). As in *Rose,* although North Carolina's "Choose Life" plate came about due to legislative initiative that culminated in a bill passed by both houses and signed into law by the Governor, and although the State of North Carolina is responsible for designing the plate and therefore bears editorial control, the literal speakers are the individual North Carolina vehicle owners who choose to buy the plate for an additional fee. Further, those vehicle owners bear the ultimate responsibility for the message. Consequently, the *Rose* decision mandates a conclusion that the "Choose Life" plates at issue here implicate private speech.

## II. The Overwhelming Majority of Other Federal Circuit Courts Agree With the Fourth Circuit that Specialty License Plates Constitute Private Speech.

In the past several years, many circuit courts have had occasion to rule on the specialty license plate issue. Of those, five out of six circuits to consider the private versus government speech issue have agreed with the Fourth Circuit's decision in *Rose,* concluding that specialty license plates at least partially implicate private speech, and

4

government restrictions on those plates must therefore remain reasonable and viewpoint neutral. *See Roach v. Stouffer*, 560 F.3d 860, 867 (8th Cir. 2009) (Choose Life specialty license plate constituted private speech); *Ariz. Life Coalition, Inc. v. Stanton*, 515 F.3d 956, 968 (9th Cir. 2008) (same); *Choose Life Illinois, Inc. v. White*, 547 F.3d 853, 863 (7th Cir. 2008) (same);[1] *Children First Foundation, Inc. v. Martinez*, No. 05-0567-CV, 05-1979-CV., 2006 WL 544502, at *2, 169 Fed. Appx. 637, 639 (2d Cir. Mar. 6, 2006) (somewhat private speech); *Women's Emergency Network v. Bush*, 323 F.3d 937, 945 n.9 (11th Cir. 2003) (private speech). Only one circuit – the Sixth Circuit – has held otherwise. *Am. Civil Liberties Union of Tenn. v. Bredesen*, 441 F.3d 370, 378-79 (6th Cir. 2006) (government speech).

Defendants contend that the analysis set forth in the Sixth Circuit's *Bredesen* opinion should control. Defs.' Resp. at 7. Specifically, Defendants point to the Sixth Circuit's reliance on the Supreme Court case of *Johanns v. Livestock Mktg Ass'n*, 544 U.S. 550, 125 S.Ct. 2055 (2005), for the proposition that the "Choose Life" specialty license plate constitutes government speech. *Id.* at 5. Specifically, the Defendants point to language in *Johanns*, relied upon in *Bredesen*, which states:

> [W]hen, as here, the government sets the overall message to be communicated and approves every word that is disseminated, it is not

---

[1] The Defendants appear to rely on these cases in their response brief and curiously explain that "both the Eighth and Ninth Circuit Courts upheld the issuance of the 'Choose Life' plate on First Amendment grounds." Defs.' Resp. at 10. What Defendants fail to note, however, is the procedural posture of both cases. In both cases, the plaintiffs were private anti-choice groups that sued the State *in order to seek approval* of the "Choose Life" license plate. Both the Eighth and Ninth Circuits found for the plaintiffs, using precisely the same analysis for which the Plaintiffs are advocating in the instant case – that the plates constitute private speech and therefore, the State cannot discriminate based on viewpoint. *See Roach*, 560 F.3d at 868-69; *Stanton*, 515 F.3d at 968. As such, both of these cases reinforce Plaintiffs' argument in this case.

5

> precluded from relying on the government-speech doctrine merely because it solicits assistance from non-governmental sources in developing specific messages.

Defs.' Resp. at 5 (quoting *Johanns*, 544 U.S. at 562); *see also Bredesen*, 441 F.3d at 375 (concluding that "*Johanns* requires the court to conclude that 'Choose Life' is Tennessee's message because the Act determines the overarching message and Tennessee approves every word on such plates").

However, *Johanns* is factually distinguishable from the specialty license plate cases. *Johanns* addressed whether a federal program that requires beef producers to finance promotional messages to support the beef industry violated the First Amendment. *Johanns*, 544 U.S. at 554. In other words, *Johanns* involved a *government-compelled subsidy* of government speech. As such, the facts in *Johanns* are more in line with the Court's ruling in *Rust v. Sullivan*, 500 U.S. 173, 111 S.Ct. 1759 (1991), in which the Supreme Court upheld regulations restricting the use of funds by grantees under Title X of the Public Health Act, 42 U.S.C. §§ 300-300a-6. Specifically, the Court in *Rust* upheld regulations that restricted doctors at funded clinics to counsel their patients about abortion. *Rust*, 500 U.S. at 193.

In *Rose*, the Fourth Circuit distinguished *Rust*, noting that "*Rust* stands for the principle that when the government creates and manages its own program, it may determine the contents and limits of that program." *Rose*, 361 F.3d at 796. The Fourth Circuit then compared the specialty license plate scheme and concluded that it "is more like a limited forum for expression than it is like a . . . clinic," as in *Rust*. *Id*. at 798. The Fourth Circuit in *Rose* explained:

6

> A review of [*Rust* and other decisions] persuades me that upholding the Act [creating the "Choose Life" plate] would require an unwarranted extension of the government speech doctrine and of the State's power to promote some viewpoints above others. Although the government may favor certain speech on the basis of viewpoint when it creates and manages its own programs, what South Carolina has done departs from this model in constitutionally significant ways. First, the State has created a limited (license plate) forum for expression, not a government program, such as one, for example, that would be carried out through a school, museum, or clinic. Second, the State has favored itself as a speaker within the license plate forum, giving its own viewpoint privilege above others. Third, the State's advocacy of the pro-life viewpoint may not be readily apparent to those who see the Choose Life plate, and thus insulates the State's advocacy from electoral accountability. The government speech doctrine was not intended to authorize cloaked advocacy that allows the State to promote an idea without being accountable to the political process.[2]

*Rose*, 361 F.3d at 795-96.

The Fourth Circuit's and the Sixth Circuit's treatment of *Rust* are therefore in direct conflict with one another. Specifically, the Sixth Circuit concluded in *Bredesen* that "[t]here is nothing in the Supreme Court's decision in *Rust* or *Johanns* that implies that the government has less right to control expressions of its policies when it relies on unpaid private people." *Bredesen*, 441 F.3d at 378. Consequently, this Court is bound by the *Rose* court's analysis of *Rust* and should read *Johanns* as squaring with *Rust*, finding that *neither* case is applicable to the specialty license plate issue.

Notably, every other circuit to rule on a specialty license plate case after *Johanns*, including those cases relied upon Defendants in their brief, has rejected the Sixth Circuit's analysis, including its conclusion that *Johanns* applies to specialty license plate

---

[2] Contrary to Defendants' argument (Defs.' Resp. at 6), the *Rose* court clarified that the specialty license plate forum actually cloaks the State from accountability, cutting against a finding of government speech. *Rose*, 361, F.3d at 795-96. The presence of a few newspaper articles about the issue (Defs.' Resp. at 2-3, 8) does not change the analysis.

7

cases. For example, in *Choose Life Illinois, Inc. v. White*, 547 F.3d 853, 863 (7th Cir. 2008), an anti-abortion advocacy group sued the Illinois Secretary of State, seeking to compel Illinois to issue "Choose Life" specialty license plates. *White*, 547 F.3d at 855. The plaintiffs in *White* argued that the plates constituted private speech, and therefore, under the forum analysis, the State's refusal to issue the plate amounted to impermissible viewpoint discrimination. The State of Illinois, like the State of North Carolina in the instant case, argued that the free speech rights of the plaintiffs were not implicated because the plates constituted government speech. *Id.* at 857. The Seventh Circuit disagreed with the State, finding that "private speech rights are implicated" in specialty license plate cases. *Id.* at 864.[3]

In so concluding, the Seventh Circuit relied heavily on the Fourth Circuit's opinions in *Rose* and *SCV* that explained the four-factor test. *Id.* at 860-61. The Seventh Circuit then discussed the *Bredesen* case and its reliance upon *Johanns*, noting that "[r]elying almost entirely on *Johanns*, a divided panel of the Sixth Circuit broke with the Fourth Circuit and held in *Bredesen* that Tennessee's 'Choose Life' specialty plate was government speech, implicating no free speech rights of private speakers whatsoever." *White*, 547 F.3d at 862. The Seventh Circuit rejected the Sixth Circuit's analysis, citing the dissent in *Bredesen,* which noted that the harm in "compelled speech" and "compelled subsidy" cases is different from the harm in the specialty-plate context. In the former, the harm is "the *compulsion*," (emphasis in original); in the latter, the harm is

---

[3] The Seventh Circuit went on to find that Illinois's rule that excluded the entire subject of abortion from its specialty-plate program was constitutional, as it was reasonable and viewpoint neutral. *White*, 547 F.3d at 865.

8

"'being denied the opportunity to speak on the same terms as other private citizens within a government sponsored forum.'" *White*, 547 F.3d at 863 (quoting *Bredesen*, 441 F.3d at 386 (Martin, J., dissenting)).

The Seventh Circuit noted that the Ninth Circuit in *Arizona Life Coalition, Inc. v. Stanton*, 515 F.3d 956, 964-65 (9th Cir. 2008) arrived at the same conclusion. *White*, 547 F.3d at 863 ("The Ninth Circuit viewed the Sixth Circuit's decision in *Bredesen* as a misapplication of *Johanns* and declined to follow it."). The Ninth Circuit in *Stanton*, like the *White* case, rejected the *Bredesen* standard, and relied upon the four-factor test set forth by the Fourth Circuit in *Rose* and *SCV* to conclude that the Choose Life plate at issue in that case implicated private speech. *Stanton*, 515 F.3d at 965.[4] Indeed, the Ninth Circuit concluded that the *Johanns* decision *actually supported* the four-factor test. *Id.*

Most recently, the Eighth Circuit has also concluded that Choose Life plates implicate private speech, rejecting the Sixth Circuit's analysis of *Johanns* in favor of the Fourth Circuit's four-factor test set forth in *Rose* and *SCV*. *Roach v. Stouffer*, 560 F.3d 860, 864-67 (8th Cir. 2009) ("Notwithstanding the Sixth Circuit's conclusion to the contrary, we now join the Fourth, Seventh and Ninth Circuits in concluding that a reasonable and fully informed observer would consider the speaker to be the organization that sponsors and the vehicle that displays the specialty license plate."). Consequently,

---

[4] The Ninth Circuit distinguished *Johanns*, noting that "specialty plate programs are not part of a larger governmental scheme to encourage some private activity, such as beef consumption." *Stanton*, 515 F.3d at 964 (internal quotations and citations omitted). The Ninth Circuit and the other courts referenced herein also relied upon several other factors to determine that the plates constitute private speech, including the fact that the specialty plates produce revenue for private organizations, *Stanton*, 515 F.3d at 965-66, and that no reasonable observer could think that a State actually sponsors 200 diverse messages set forth on specialty license plates. *Id.* at 968; *Roach*, 560 F.3d at 868. Those factors are also applicable in the instant case.

even if the *Rose* case were not binding precedent on this Court, the decisions of the overwhelming majority of circuits demonstrate that the plates at issue implicate private speech, and restrictions must therefore be reasonable and viewpoint neutral.

Finally, to the extent that Defendants are arguing that the Fourth Circuit's four-factor test is no longer viable after *Johanns*, *see* Defs.' Resp. at 10, a recent Fourth Circuit decision makes it clear that the test is alive and well in this Circuit. *See Turner v. City Council of the City of Fredericksburg, Va.*, 534 F.3d 352, 354 (2008) (applying the four-factor test post-*Johanns* in a legislative prayer case). Further, as noted herein, several other circuits have at least in part relied on the four-factor test, post-*Johanns*, in this very scenario. *Roach*, 560 F.3d at 866-67; *Stanton*, 515 F.3d at 965; *White*, 547 F.3d at 863.

## III. North Carolina Legislators and Officials Concede that the Choose Life Specialty Plates Constitute Private Speech

Moreover, as noted in the Plaintiffs' initial brief, North Carolina legislators and officials – including the Division of Motor Vehicles itself – have conceded that the plates at issue in this case constitute private speech. Verified Compl. at ¶ 27, 33; Answer at ¶ 27 (Doc. 25). Consequently, the "Choose Life" specialty plate at issue in this case, just like the same plate at issue in *Rose*, at least partially implicates private speech and must therefore remain viewpoint neutral, as discussed in Plaintiffs' initial brief.

## IV. CONCLUSION

Plaintiffs respectfully request that this Court enter a Preliminary Injunction, as set forth more fully in the Plaintiffs' initial brief and the Verified Complaint.

Respectfully submitted this 14th day of November, 2011.

/s/ *Katherine Lewis Parker*
Katherine Lewis Parker
NC Bar No. 36263
Legal Director
American Civil Liberties Union
of North Carolina Legal Foundation
Post Office Box 28004
Raleigh, North Carolina 27611
Telephone: (919) 834-3466
Facsimile: (866) 511-1344
Email: kparker@acluofnc.org

Counsel for Plaintiffs

# CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of November, 2011, I electronically filed the foregoing REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to counsel for Defendants:

>**Neil Dalton**
>ndalton@ncdoj.gov
>Special Deputy Attorney General
>North Carolina Department of Justice
>Post Office Box 629
>Raleigh, NC 27602
>Telephone: (919) 716-6543
>
>**Hal F. Askins**
>haskins@ncdoj.gov
>Special Deputy Attorney General
>North Carolina Department of Justice
>Post Office Box 629
>Raleigh, NC 27602
>Telephone: (919) 716-6560

>>*/s/ Katherine Lewis Parker*
>>Katherine Lewis Parker